# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| ROBERTA A. FLORIANA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:17-CV-384-TLS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Roberta A. Floriana seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her applications for disability and disability insurance benefits as well as supplemental security income. The Plaintiff argues that the Commissioner wrongfully denied her applications and erred by performing only a perfunctory analysis regarding whether the Plaintiff's impairments met or medically equaled any of the Medical Listings at step three and by failing to give good reasons for discounting the opinions of the Plaintiff's treating and examining sources.

## BACKGROUND

On November 14, 2014, the Plaintiff filed a Title II application for a period of disability and disability insurance benefits as well as a Title XVI application for supplemental security income, alleging disability beginning on July 31, 2014. (R. at 18.) Her claims were denied initially on February 3, 2015, and upon reconsideration on April 7, 2015. (*Id.*) On May 6, 2015, the Plaintiff appeared with counsel and testified at a hearing before an administrative law judge

(ALJ). (*Id.*) Micha A. Daoud, a vocational expert (VE), also appeared and testified at the hearing. (*Id.*) On April 18, 2017, the ALJ denied the Plaintiff's applications, finding she was not disabled from her alleged onset date. (R. 18–33.) On July 16, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–3.)

On September 6, 2017, the Plaintiff filed this claim [ECF No. 1] in federal court against the Acting Commissioner of the Social Security Administration.

## THE ALJ'S FINDINGS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. §§ 423(d)(2)(A), 1382c(a)(3)(B).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. §§ 404.1520, 416.920. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA since her alleged disability onset date, July 31, 2014. (R. 20.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under §§ 404.1520(c), 416.920(c). In this case, the ALJ

determined that the Plaintiff had multiple severe impairments, including longstanding degenerative joint diseases (DJD) of the knees, status-post left knee partial meniscectomy and arthroplasty in 2009 and January 5, 2015; minimal degenerative disc disease (DDD) of the lumbar spine; generalized osteoarthritis in multiple joints; fibromyalgia; obesity; and asthma. (R. 21.) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work. (*Id*.) The ALJ also found that the Plaintiff had other medically determinable, but non-severe, impairments, including microvascular disease, headaches, hypertension, hyperlipidemia, status-post August 2013 right carpal tunnel (CTS) release, bilateral CTS/osteoarthritic changes in the bilateral hands without significant corroborating hand dysfunction, gastro-esophageal reflux disease (GERD), hypothyroidism, resection of upper lip without evidence of recurrence, erosive esophagitis, possible diabetes, mild degenerative changes of the left foot, longstanding right foot accessory navicular and neuropathy. (*Id.*) The ALJ also found that the Plaintiff's medically determinable impairments of depressive disorder and attention deficit hyperactivity disorder (ADHD) did not cause more than minimal limitations in the Plaintiff's ability to perform basic mental work activities and were non-severe. (R. 22.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." §§ 404.1520(d), 416.920(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types

of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," §§ 404.1520(a)(4)(iv), 416.920(A)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1. (R. 24–25.) In so doing, the ALJ considered Medical Listing 1.00B2b, 1.00B2c, 3.02, and 3.03B. (R. 25.) The ALJ then found that the Plaintiff had an RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except:

> Additional limitations include only occasional balancing, stooping, kneeling, crouching, crawling and climbing ramps/stairs, but she can never climb ladders, ropes or scaffolds. The claimant should also avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases and other similar respiratory irritants, and she should avoid concentrated exposure to workplace hazards such as unprotected heights and dangerous moving machinery.

(*Id.*)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of her alleged onset date. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective symptoms and found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (R. 26.) But, the ALJ found that the Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

In looking to the objective medical evidence, the ALJ gave great weight to the opinions of the State Agency physicians, who concluded that the Plaintiff could work at a light exertional level with some limitations. (R. 30.) The ALJ found that there were no contrary opinions in the record and that the State Agency physicians' opinions were "reasonably consistent with and supported by the overall evidence." (*Id.*) The ALJ afforded little weight to the opinions of the

Plaintiff's treating physician, Dr. Patel, because "they do not reflect any documented rationale for such limitations." (R. 28.) The ALJ also afforded little weight to the functional capacity evaluation that determined that the Plaintiff was limited to the equivalent of sedentary exertion because the examiner was unable to identify the Plaintiff's safe physical maximum potential on some tasks because she "expressed self-limiting behavior due to pain without visible signs of exerting maximal effort." (R. 30.)

The Plaintiff's has past relevant work as an order filler, a machine tender, and a packager, all of which are both generally and actually performed at a medium exertional level. (R. 31.) The ALJ concluded that the Plaintiff was not capable of performing any past relevant work. (*Id.*.) However, relying on the VE's testimony, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.*) Ultimately, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act since her alleged onset date and was not entitled to disability insurance benefits or supplemental security income. (R. 32–33.)

**STANDARD OF REVIEW**

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009).

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. The Court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**ANALYSIS**

The Plaintiff argues that the Commissioner wrongfully denied her applications and erred by performing only a perfunctory analysis regarding whether the Plaintiff's impairments met or medically equaled any of the Medical Listings at step three and by failing to give good reasons for discounting the opinions of the Plaintiff's treating and examining sources.

Generally, controlling weight is given to the treating physician's opinion only if it is well-supported by medically acceptable, objective evidence and consistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d)(2). When the treating physician's opinion is not entitled to controlling weight—such as where it is not supported by the objective medical evidence, is inconsistent with other substantial evidence in the record, or is internally inconsistent, *see Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995))—the ALJ should proceed with assessing the value of the opinion in the same way he would any other medical evidence. *See id.* Assessing the weight to afford the opinion depends on a number of factors, such as the length, nature, and extent of the physician and claimant's treatment relationship, 20 C.F.R. § 404.1527(c)(2)(i)–(ii), whether the physician supported his or her opinions with sufficient explanations, *id.* § 404.1527(c)(3), and whether the physician specializes in the medical conditions at issue, *id.* § 404.1527(c)(5). If the ALJ discounts the physician's opinion after considering these factors, that decision stands so long as the ALJ "minimally articulate[d]" his reasons. *Berger*, 516 F.3d at 545 (quoting *Rice v. Barnhart*, 384 F.3d 363, 372 (7th Cir. 2004)).

It is not the reviewing Court's job to determine whether the treating physician's opinion should have been given controlling weight. *See Clifford*, 227 F.3d at 869 ("[W]e review the entire record, but do not reweigh the evidence, resolve conflicts, decide questions of credibility,

or substitute our own judgment for that of the Commissioner."). However, an ALJ must give "good reasons" for the weight afforded to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). "The ALJ must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (first citing 20 C.F.R. §§ 404.1527(c)–(d); then citing *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994); and then citing *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993)). A court on review must uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010).

One of the treating sources that the ALJ discounted was the Plaintiff's family practitioner, Dr. Patel. The reason the ALJ gave for affording Dr. Patel's opinions little weight was that "they do not reflect any documented rational for [the asserted] limitations." (R. 28.) For example, with regard to the Plaintiff's alleged handling symptoms, the ALJ stated that there were "no significant hand deficits during [the Plaintiff's] rheumatology exams" and that "[w]hile the claimant underwent an August 2013 right CTS release, there were no deficits noted at the claimant's later January 2015 consultative exam, and there were none evidenced at the March 2016 FCE exam or July 2016 neurology exam (Exhibits 1F; 9F; 28F; 35F)." (*Id.*) The ALJ reasoned that Dr. Patel "noted mild to moderate distress, not elsewhere cited by examiners." (*Id.*) The ALJ also noted that neurologist Dr. John Wulff "did not find much in the way of neuropathy type symptoms" and that no handling deficits were observed during the March 2016 FCE report.

The ALJ's opinion appears to assert that the Plaintiff's CTS release surgery effectively disposed of her handling impairments. However, there is evidence of record that the ALJ appears to have ignored that does not support this assertion. For example, in November 2015, the

8

Plaintiff reported that the surgery was not helpful and that she wears braces to bed at night on both wrists. (R. 720.) In March 2016, the FCE report indicated that the Plaintiff reported numbness and tingling in both hands, and reiterated that she uses braces on both wrists at night. (R. 944.) In November 4, 2016, Dr. Wulff specifically noted the Plaintiff's continued issues with CTS. (R. 933.) The ALJ's assertion that no deficits were noted in either or the 2016 exams is contradicted by the record, and the ALJ's conclusion that there is "no documented rationale" that supports Dr. Patel's opinion is therefore not accurate.

The Social Security Regulations enumerate a series of factors for the ALJ to consider when deciding whether to give a treating physician's opinion controlling weight:

> Even when an ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ is not permitted simply to discard it. Rather, the ALJ is required by regulation to consider certain factors in order to decide how much weight to give the opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination," because the longer a treating physician has seen a claimant, and particularly if the treating physician has seen the claimant "long enough to have obtained a longitudinal picture" of the impairment, the more weight his opinion deserves; (2) the "nature and extent of the treatment relationship"; (3) "[s]upportability," i.e., whether a physician's opinion is supported by relevant evidence, such as "medical signs and laboratory findings"; (4) consistency "with the record as a whole"; and (5) whether the treating physician was a specialist in the relevant area.

*Scrogham v. Colvin*, 765 F.3d 685 (7th Cir. 2014) (citing 20 C.F.R. § 404.1527(c)(2)(5)). An ALJ is not always required to explicitly analyze each of these factors where the "decision makes clear that [the ALJ] was aware of and considered many of the factors." *Schreiber v. Colvin*, 516 F. App'x 951, 959 (7th Cir. 2013). Rather, the "inquiry is limited to whether the ALJ sufficiently accounted for the factors . . . and built an 'accurate and logical bridge' between the evidence and his conclusion." *Id.* (citing *Elder*, 529 F.3d at 415–16 (affirming ALJ's decision where ALJ explicitly discussed only two of the factors)).

The Court is not convinced that the ALJ took all of these factors into account—especially with regard to the length and nature of Dr. Patel's treatment—and the lack of such discussion does not permit the Court the ability to meaningfully assess her determination to give Dr. Patel's opinion little weight. "[E]ven assuming that there had been a reason to deny controlling weight to Dr. [Patel's] opinion, the ALJ was not permitted simply to discard it." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016) (internal quotations omitted). In light of the supporting information in the record for Dr. Patel's opinion cited above, the ALJ's conclusion that Dr. Patel's opinion contains findings represented nowhere else in the record is not adequately explained. Because this conclusion caused the ALJ to give great weight to the State Agency examiners' opinions over Dr. Patel's, the Court cannot say that the ALJ built an accurate and logical bridge from the evidence to her conclusions. This failure to give an adequate explanation for discounting Dr. Patel's opinion and the apparent contradictions between the ALJ's assertions and the medical record requires Court to remand this case.

## CONCLUSION

Accordingly, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order. Because the Court is remanding on this issue, it need not consider the remainder of the parties' arguments. However, the Court is skeptical that the ALJ's step three analysis rises above the level of "perfunctory" and encourages the ALJ to give a more detailed explanation of her reasoning.

SO ORDERED on September 4, 2018.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT